AO 106 (Rev. 04/10) Application for a Search Warrant (requesting AUSA JOSEPH T. LABRUM III

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. 18-1349-M
White 2009 Volkswagen Passat, )
VIN#WVWJK73C19P047524 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

White 2009 Volkswagen Passat, VIN#WVWJK73C19P047524, currently located at Pa. State Police Belmont Barracks

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized):*

Controlled substances, including kilogram quantities of heroin and fentanyl, U.S. currency, historical GPS records, firearms, papers, documents and other evidence relating to the planned delivery of 14 kilograms of heroin and fentanyl on August 20, 2018.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 846 and 841(a)(1), (b)(1)(A) | Conspiracy to distribute 1 kilo or more of heroin and 400 g. or more of fentanyl; Possession with intent to distribute 1 kilo or more of heroin and 400 g. of fentanyl |

The application is based on these facts:
See attached Affidavit, incorporated here by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Harry C Ubele*
_____
*Applicant's signature*

Harry C. Ubele, Special Agent, HSI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *August 22, 2018*
_____

City and state: Philadelphia, Pennsylvania
_____

*Carol Shd ell*
_____
*Judge's signature*

Hon. Carol Sandra Moore Wells, U. S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Harry C. Ubele, being duly sworn, depose and say:

1.     I have been a Special Agent with U.S. Homeland Security Investigations (hereinafter referred to as "HSI"), for over fifteen years.  During this time, I have participated in numerous investigations relating to violations of Title 18, United States Code, Sections: 371-Conspiracy, 952- Importation of Narcotics, 545-Smuggling, 1956-Money Laundering and Money Laundering Conspiracy, 922(g)-Felon in Possession of a Firearm;  and  Title 21 United States Code, Sections 841-Distribution and Possession with Intent to Distribute a Controlled Substance,  843 (b)-Use of a Communication Facility to Commit a Drug Trafficking Crime, 846-Conspiracy to Distribute Controlled Substances, 952-Importation of Controlled Substances, 963-Attempt & Conspiracy to Import a Controlled Substance.  I am currently assigned to the Airport Investigations Group, Border Enforcement Security Team (BEST) of the HSI Office of the Special Agent in Charge in Philadelphia, Pennsylvania where I have conducted and participated in numerous criminal investigations involving the trafficking of controlled substances. Throughout my career, I have conducted and participated in numerous complex criminal investigations targeting both domestic and international criminal organizations.  I have repeatedly participated in the handling and interviewing of numerous witnesses, cooperating defendants, confidential informants, the preparation and execution of search warrants and arrest warrants, utilization of undercover assets and the utilization of various forms of surveillance, which have included physical and electronic means.  I and the agents and police officers I work with are familiar with the methods of drug organizations and their operations, the terminology used and the scope of their influence. I am also aware through my experience and training that members of drug organizations employ various practices and methods to obtain controlled substances in an effort to avoid detection by law enforcement, which include the utilization of couriers to procure controlled substances from Sources of Supply, and the possession and carrying of concealed weapons in order to protect narcotics stashes and currency representing proceeds of narcotics transactions in their possession and control.

2.     In April 2018, a Confidential Source (CS) provided information to members of Homeland Security Investigations (HSI) – Airport Investigations Group (AIG) BEST Special Agents, Pennsylvania State Police (PSP), Eastern Interdiction Unit (EIU), Pennsylvania Office of Attorney General (POAG) regarding an individual involved in narcotics trafficking.  The CS has proven his/herself reliable by providing information in past investigations to law enforcement personnel, resulting in seizures/arrests.

a.     The CS provided law enforcement with information regarding an individual involved in trafficking large quantities of narcotics, and was identified as Kenneth RIVAS, W/H/M, DOB 01/15/1985.  The CS advised that RIVAS told him/her that he was already involved with arranging large shipments of cocaine, approximately thirty (30) plus kilos in quantity, to the Philadelphia, PA area from California, where both the CS and RIVAS currently reside.

b.        A criminal history check on RIVAS was conducted, which showed that he had past arrests in the state of California for the following: Sex with A Minor +/- 3YRS, Contribute Delinquency of Minor (2004), Driving Under the Influence, Reckless Driving (2010), and a pending case of Carrying Concealed Weapon, Sell/Furnish/Etc. Marijuana/Hash (2017).

3.        On July 31, 2018, HSI PIA BEST received information from CS. CS stated that JUNIOR, subsequently identified as Jesus LOPEZ, DOB: 9-19-1987 arrived in Philadelphia around July 30, 2018 and would be staying in the Philadelphia area until he was able to get a deal together for CS and his/her Philly guys.

4.        On August 9, 2018, HSI PIA BEST received information from CS. CS stated that he/she spoke with JUNIOR on the telephone. JUNIOR told CS that he was sitting on five (5) kilograms of fentanyl. JUNIOR and his partner, name unknown, funded the purchase and stated that they would hold it for CS. JUNIOR further stated that they were getting seven (7) kilograms of cocaine on Monday, August 13, 2018. JUNIOR stated that they would send a picture for verification on Monday.

5.        On August 13, 2018, HSI PIA BEST received information from CS. CS spoke with JUNIOR. JUNIOR was not comfortable talking about fentanyl on the telephone. The verification picture would be sent on Wednesday, when it arrived. JUNIOR asked if JJ (HSI undercover agent) could meet him at Chickie's and Pete's to get a sample. CS agreed, but RIVAS's cousin, not identified, did not like that idea because he thought JUNIOR and JJ would cut them out of the deal.

6.        On August 14, 2018, HSI PIA BEST received information from CS. CS stated that JUNIOR called RIVAS and told him that the picture was still coming Wednesday, but that he wanted to get RIVAS an Airbnb room to do the deal instead of a hotel.

7.        On August 16, 2018, HSI PIA BEST received information from CS. CS stated that he/she went to RIVAS's house. CS stated that the cousin was there. A telephone call was placed to JUNIOR, but he was allegedly driving back from New York and could not talk. The cousin stated that the five (5) kilograms of fentanyl were there and being held for CS. In addition, the cousin stated there are seven (7) kilograms of cocaine and fifteen (15) kilograms of heroin available.

8.        On August 19, 2018, HSI PIA BEST received information that Ken RIVAS and had a reservation from Los Angeles International Airport (LAX) to Nashville International Airport (BNA) aboard American Airlines Flight #1289 and BNA to Philadelphia International Airport (PHL) aboard American Airlines Flight #4640.

9.        On August 20, 2018, RIVAS made a consensually monitored telephone call to CS. RIVAS stated that he had samples of each, referring to the heroin and fentanyl and that he was hoping to make his flight back to LAX that afternoon. RIVAS stated that JUNIOR was not comfortable conducting the meeting and sale of the kilograms in CS's room; therefore, to make

JUNIOR comfortable, RIVAS suggested that they conduct the deal in CS's room and tell JUNIOR that it is RIVAS's room.

10.     On August 20, 2018, HSI PIA BEST and PSP observed RIVAS and GALLARDO near 4th and South Streets, Philadelphia, PA. CS met with RIVAS and GALLARDO. RIVAS handed CS a brown paper bag containing (3) samples of alleged heroin and fentanyl.

11.     Initial field tests conducted confirmed one of the samples tested positive for heroin.

12.     On August 20, 2018, RIVAS and GALLARDO arrived at the Home 2 Suites, 1200 Arch Street, Philadelphia, PA 19107. RIVAS and CS talked in the lobby. RIVAS subsequently departed the Home 2 Suites and entered a white Volkswagen Passat, bearing Pennsylvania temporary registration, 1455-134.

13.     On August 20, 2018, LOPEZ, Flavio Gonzalez, DOB: 10-18-1978 (driver), Richard GALLARDO, DOB: 8-8-1997, and RIVAS arrived at the Home 2 Suites, 1200 Arch Street, Philadelphia, PA 19107 in the white Volkswagen Passat, bearing Pennsylvania temporary registration, 1455-134. RIVAS and GALLARDO departed the back seat. GALLARDO proceeded to the trunk of the Passat, retrieved a black and red Nike Air backpack. RIVAS and GALLARDO met with CS and proceeded to room #706.

14.     On August 20, 2018, at approximately 1920 hours, Undercover Agent 1 (UCA1) made a consensually monitored telephone call to CS at telephone number (805) 755-9358. This number is RIVAS's telephone number. CS grabbed the telephone from RIVAS and told UCA1 to proceed to the hotel to look at the (7) kilograms of heroin and/or fentanyl.

15.     UCA1 proceeded to the Home 2 Suites, Room #706. CS told UCA1 that its seven (7), referring to the number of kilograms. UCA1 stated that its only half of what was sought, and asked RIVAS if he should only bring half the money. RIVAS stated yes. UCA1 observed the kilograms in plain view on the tile floor immediately upon entering the room. CS and UCA1 stated that they were going to retrieve the money and departed room #706.

17.     On August 20, 2018, at approximately 1930 hours, HSI, and PSP entered room #706, and arrested RIVAS and GALLARDO in violation of Title 21 United States Code, Sections 841(a)(1).

18.     Subsequent to RIVAS and GALLRDO exiting the Volkswagen Passat, HSI Agents, BNI Agents and PSP Troopers observed the Passat departing the hotel.

19.     At approximately the same time, PSP conducted a probable cause traffic stop on the Volkswagen Passat and arrested GONZALEZ and LOPEZ in violation of Title 21 United States Code, Sections 841(a)(1).

20.     TRUNarc testing of the seven kilogram bricks seized from the hotel room indicated a positive result for heroin as to four of the bricks, and for fentanyl as to three of the bricks.

21.     During conversations leading up to the planned transaction in Room #706 of the Home 2 Suites Hotel, Kenneth RIVAS, Jesus LOPEZ and the CS agreed that RIVAS and LOPEZ would initially deliver ½ of the 14 kilograms of narcotics agreed upon in an initial transaction (4 kilograms of heroin and 3 kilograms of fentanyl), after which payment would be produced by UCA1, at which point RIVAS and LOPEZ, with assistance from GONZALEZ and GALLARDO, would orchestrate the delivery of the second 7 kilograms (4 kilograms of fentanyl and 3 kilograms of heroin. To UCA1.

22.     Based on the seizure of approximately 7 kilograms of narcotics (4 kilograms of heroin and 3 kilograms of fentanyl) effected from hotel room #706, at the Home 2 Suites, in Philadelphia PA on August 20, 2108, your affiant has probable cause to believe that the second half of the planned delivery, that is, approximately 4 kilograms of fentanyl and 3 kilograms of heroin, as well as other evidence relating to or confirming the planned narcotics transaction, including, but not limited to, firearms, records, documents, papers and/or U.S. currency, is still concealed inside the subject Volkswagen Passat; thus your affiant is seeking a search warrant for the white 2009 Volkswagen Passat, bearing Pennsylvania temporary registration, 1455-134, VIN#WVWJK73C19P047524, seeking additional narcotics as well as any records, documents and other evidence pertaining to the planned narcotics delivery.

Harry C. Ubele
Special Agent
Homeland Security Investigations

Sworn To and Subscribed Before Me This
22ⁿᵈ Day of August, 2018.

HONORABLE CAROL SANDRA MOORE WELLLS
*United States Magistrate Judge*